**UPMC–BRADDOCK HOSPITAL,**
Appellant

v.

**Kathleen SEBELIUS, as the Secretary of the United States Department of Health and Human Services.**

No. 08–4247.

United States Court of Appeals, Third Circuit.

Argued Oct. 6, 2009.

Filed: Jan. 20, 2010.

Samuel W. Braver, Esq., [Argued], Brendan G. Stuhan, Esq., Jan O. Wenzel, Esq., Buchanan Ingersoll & Rooney, Robert B. Ramsey, III, Esq., Titus & McConomy, Pittsburgh, PA, for Appellant.

Joel L. McElvain, Esq., [Argued], United States Department of Justice, Civil Division, Federal Programs Branch, San Francisco, CA, Michael S. Raab, Esq., United States Department of Justice Civil Division, Washington, DC, Jessica L. Smolar, Esq., Office of United States Attorney, Pittsburgh, PA, for Appellee.

Before: RENDELL and GARTH, Circuit Judges, and PADOVA, District Judge *.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

UPMC–Braddock Hospital appeals from the order of the District Court for the Western District of Pennsylvania granting summary judgment in favor of appellee Kathleen Sebelius, Secretary of the United States Department of Health and Human Services ("Secretary"), denying a reimbursement claim for loss on depreciable assets resulting from the merger between Braddock Medical Center ("BMC") and University of Pittsburgh Medical Center System ("UPMCS"). A statutory merger may result in a depreciation adjustment—a reassessment of the value of assets—under Medicare regulations, but only if the merger was between "unrelated parties" and constituted a "bona fide sale." The District Court here determined that the merger between BMC and UPMCS was not a bona fide sale, but did not reach the issue of whether the merger was between unrelated parties. We conclude that the District Court's determination that the merger was not a bona fide sale was not based on substantial evidence, in light of errors made in determining the value of certain assets. Thus, remand is required in order for the agency to consider the bona fide sale issue anew. However, we will also address the issue of whether the parties were "related" because, if they were, the merger cannot satisfy the two prong test and remand would be a useless act.

We find that the Secretary's interpretation of the related party regulations—requiring examination of whether the parties were related pre- *and* post-merger—is contrary to the plain language of the regulations, and we conclude that, under the proper, pre-merger test, the parties were not related at the time of the transaction. We will therefore vacate the District Court's order and remand for further proceedings consistent with this opinion.

I.

We recently confronted one of the issues raised in this appeal, regarding whether the transaction was a "bona fide sale," in a similar context. *See Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368 (3d Cir.2009). While *Einstein* informs our analysis as to that aspect of the case, the facts here are markedly different.

On November 30, 1996, Heritage Health Systems ("Heritage") and its subsidiaries, BMC and the Heritage Health Foundation ("Foundation"), entered into an Agreement to Merge and Affiliate with UPMCS.

* Honorable John R. Padova, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

BMC was a nonprofit corporation located in Pittsburgh, Pennsylvania, with Heritage as its sole corporate member. UPMCS is a nonprofit corporation also based in Pittsburgh. The Foundation is a Pennsylvania nonprofit corporation with a pre-merger purpose of providing support of a charitable nature to BMC through fund-raising and other similar activities. As part of the agreement, BMC transferred its assets and liabilities to UPMCS pursuant to a merger of BMC into a to-be-formed subsidiary of UPMCS that was named UPMC–Braddock. The Agreement also provided for the structure of the governing board of UPMC–Braddock and for various other rights and responsibilities pertaining to the governance of the newly created UPMC–Braddock. Specifically, two-thirds of the voting directors of the board of UPMC–Braddock were to be appointed by UPMCS, and not less than one-third of the voting directors were to be appointed by the Foundation. At the same time, the Foundation entered into a separate agreement with UPMCS setting up a Fund consisting of $3 million dollars that was "subject to exclusive supervision and control" of the Foundation, but which was to be used to "support" various activities of

UPMC–Braddock. App. 592–93, 601. Following the merger, UPMC–Braddock, acting as BMC's successor, filed a claim with Medicare for reimbursement of losses related to the transfer of depreciable medical equipment through the merger pursuant to 42 C.F.R. § 413.134(f) and 413.134($l$)(2).[1] As is discussed more fully below, the regulations permit the loss adjustment only if the transaction was a "bona fide sale" between "unrelated parties." The claim was denied by Medicare's fiscal intermediary, Veritus Medicare Services ("Intermediary"). UPMC–Braddock subsequently appealed the Intermediary's denial of its claim to the Provider Reimbursement Review Board ("PRRB").

The PRRB ruled in favor of UPMC–Braddock, disagreeing with the Intermediary's conclusion and determining that the statutory merger between BMC and UPMCS was not between related parties. In particular, the PRRB rejected the Intermediary's argument that the phrase "between related parties" in the regulations applies not only to the relationship between the pre-merger entities, but also to the relationship that exists between the pre-merger entities and the entity that results post-merger—in this case, the rela-

---

1. Section § 413.134(f)(1) provides:
   Depreciable assets may be disposed of through sale, scrapping, trade-in, exchange, demolition, abandonment, condemnation, fire, theft, or other casualty. If disposal of a depreciable asset results in a gain or loss, an adjustment is necessary in the provider's allowable [reimbursable] cost.... The treatment of the gain or loss depends upon the manner of disposition of the asset, as specified in paragraphs (f)(2) through (6) of this section.
   Statutory mergers between unrelated parties were later included as a means of disposal of an asset that could result in an adjustment:
   Statutory merger between unrelated parties. If the statutory merger is between two or more corporations that are unrelated (as specified in § 413.17), the assets of the merged corporation(s) acquired by the sur-

viving corporation may be revalued.... Statutory merger between related parties. If the statutory merger is between two or more related corporations (as specified in § 413.17), no revaluation of assets is permitted for those assets acquired by the surviving corporation.
   42 C.F.R. § 413.134($l$)(2). At the time of the merger, the statutory merger subsection was designated as 42 C.F.R. § 413.134($l$); in 2000 it was redesignated as subsection (k) without alteration to its content. Medicare Program; Payment Amount if Customary Charges Are Less Than Reasonable Costs: Technical Amendments, 65 Fed.Reg. 8660 (Feb. 22, 2000) (codified at 42 C.F.R. § 413.134). All references to the Code of Federal Regulations will be to the 1997 version unless otherwise noted.

tionship between BMC and UPMC–Braddock. The PRRB concluded that the Intermediary's reading of the related parties requirement was contrary to the plain language of the regulation, which was "unambiguous in its meaning that the related party concept will be applied to the entities that are merging as they existed *prior* to the transaction." App. 756 (emphasis in original). The PRRB dealt with the bona fide sale requirement in conclusory terms, stating that "the merger is not required to meet the bona fides of sales transactions addressed in 42 C.F.R. § 413.134(f)(2)." App. 755. The PRRB remanded several issues regarding consideration to the Intermediary, but only for purposes of computing the reimbursable loss.

The PRRB's ruling was then reversed by the Deputy Administrator ("Administrator") of Centers for Medicare and Medicaid Services ("CMS"), who denied UPMC–Braddock's claim for reimbursement, disagreeing with the PRRB on both the related parties issue and the bona fide sale issue. The Administrator found that the bona fide sale requirement did apply to the merger, and that the difference between the value of the transferred assets and the consideration received for them in the course of the merger indicated the absence of a bona fide sale. App. 50–52. Additionally, the Administrator found that the transaction was not consummated at "arm's length," as required by the bona fide sale provision. App. 50. The Administrator further concluded that the PRRB's interpretation of the "related parties" provision was incorrect and adopted the Intermediary's position that the related parties

inquiry should properly consider the relationship between both the pre- and post-merger entities. App. 41–47. Using this interpretation of the related parties provision, the Administrator concluded that BMC and UPMC–Braddock were "related parties," and disallowed the loss claim. App. 48. The Administrator's decision became the final decision of the Secretary.

UPMC–Braddock appealed the Administrator's decision to the District Court pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551–59, and the parties consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.[2] UPMC–Braddock and the Secretary each filed motions for summary judgment. The District Court denied UPMC–Braddock's motion for summary judgment and granted the Secretary's motion for summary judgment, affirming the decision of the Administrator. UPMC–Braddock timely appealed.[3]

## II.

Our review of agency action is governed by the APA, 5 U.S.C. § 706. We may only set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Mercy Home Health v. Leavitt*, 436 F.3d 370, 380 (3d Cir.2006)

**2.** The statute provides that "[t]he consent of the parties allows a magistrate judge ... to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 636(c)(3). Accordingly, we refer to the judgment, conclusions, and reasoning of the Magistrate Judge as the judgment, conclusions, and reasoning

of "the District Court." *See Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 430 n. 1 (3d Cir.2009).

**3.** The District Court had jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

(quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

## III.

Under the Medicare Act (the "Act"), 42 U.S.C. § 1395 et seq., Medicare service providers such as UPMC–Braddock are entitled to claim the depreciation of property and equipment used to provide health care to Medicare patients as a reimbursable cost.[4] 42 U.S.C. § 1395f(b)(1). An asset's depreciable value is initially set at its "historical cost," generally equal to the purchase price, which is then prorated over its estimated useful life. 42 C.F.R. § 413.134(a)(3) and 413.134(b)(1). However, the calculated annual depreciation is only an estimate of the asset's declining value. When an asset is ultimately sold or disposed of by the provider for less than its "undepreciated basis" a "depreciation adjustment" is made, measured by the difference between the sales price and the estimated remaining value. The health-care provider can submit a claim for additional reimbursement from the Medicare program on the basis of such a depreciation adjustment.[5]

In 1979, CMS adopted regulations whereby transfers in statutory mergers qualified for such depreciation adjustment, subject to certain requirements. 42 C.F.R. § 413.134($l$)(2).[6] The transfer of assets in a statutory merger can give rise to a depreciation adjustment only if the merger was between "unrelated parties" as defined by 42 C.F.R. § 413.17, and, if the merged corporation was a health care provider before the merger, only if the merger was a "bona fide sale." 42 C.F.R. § 413.134($l$)(2)(i) and 413.134(f); *Einstein,* 566 F.3d at 376–78. Crucially, both of these requirements must be satisfied for there to be a depreciation adjustment entitling a provider to reimbursement for depreciation-related losses.

### A. Bona Fide Sale

#### 1.

In addition to promulgating regulations, the Secretary issues manuals to assist healthcare providers and fiscal intermediaries in administering the system of reimbursement and in interpreting the promulgated regulations. In *Einstein,* 566 F.3d at 375–76, we noted that two of these

---

**4.** Medicare ultimately phased out the cost reimbursement method of paying hospitals for capital-related costs, though the cost reimbursement method was in effect at all times relevant to this action.

**5.** In order to obtain a Medicare reimbursement, a health care provider must file an annual cost report with its fiscal intermediary. 42 C.F.R. §§ 413.20(b), 413.24(f). The intermediary then determines the amount of the reimbursement and issues a Notice of Amount of Program Reimbursement to the provider. 42 C.F.R. § 405.1803. If a provider disagrees with the intermediary's determination, it may file an appeal with the PRRB. 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1835. The decision of the PRRB becomes the final administrative decision after sixty days unless the Secretary, through the Administrator, elects to review the decision within that time

period. 42 U.S.C. § 1395oo(f)(1). A provider may seek judicial review of the final decision of the PRRB or the Administrator in a federal district court. 42 U.S.C. § 1395oo(f)(1).

In 1997, Congress amended section 1861 of the Social Security Act, 42 U.S.C. § 1395x(v)(1)(*O*)(i), setting the asset's value equal to the owner's historical cost less depreciation allowed, thereby eliminating the possibility of gains or losses resulting from asset disposals after August 5, 1997. This amendment has no effect on the merger at issue here, which occurred on November 30, 1996.

**6.** A statutory merger is defined as "a combination of two or more corporations under the corporation laws of the State, with one of the corporations surviving. The surviving corporation acquires the assets and liabilities of the merged corporation(s) by operation of State law." 42 C.F.R. § 413.134(*l*)(2).

manuals are particularly relevant for determining the standards relevant to whether a "bona fide sale" has taken place: the Provider Reimbursement Manual ("PRM") and the Program Memorandum A–00–76 ("PM"), which was issued on October 19, 2000, and entitled "Clarification of the Application of the Regulations at 42 CFR 413.134(*l*) to Mergers and Consolidations Involving Non-profit Providers."

■ The PM provides that "no gain or loss may be recognized for Medicare payment purposes unless the transfer of the assets resulted from a bona fide sale as required by regulation 413.134(f) and as defined in the PRM at 104.24." The cited regulation, 42 C.F.R. § 413.134(f), introduces the "bona fide sale" language at subsection 413.134(f)(2), but does not define it. The referenced passage in the PRM clarifies the meaning:

> A bona fide sale contemplates an arm's length transaction between a willing and well informed buyer and seller, neither being under coercion, for reasonable consideration. An arm's length transaction is a transaction negotiated by unrelated parties, each acting in its own self interest.

PRM, Ch. 1, § 104.24; App. 820. Thus, a "bona fide sale" in this context is a transaction that has been (1) negotiated at arm's length and (2) results in exchange of reasonable consideration. *Einstein*, 566 F.3d at 377–78.

### 2.

■ The District Court granted the Secretary's motion for summary judgment on the ground that the merger between BMC and UPMCS that gave rise to UPMC–Braddock did not constitute a bona fide sale. This conclusion was based on the District Court's finding that there was substantial evidence to support the Secretary's conclusion that reasonable consideration was not exchanged. The District Court did not discuss the issue of whether the transaction was negotiated at arm's length. We review de novo the District Court's conclusion that substantial evidence supported the Secretary's position. *Mercy Home Health*, 436 F.3d at 377.

### a.

In assessing whether reasonable consideration was exchanged, a determination must be made as to whether the exchange of value for value was close enough to qualify as reasonable consideration. Relevant questions include: Is there a disparity? How large is it? Both the Administrator and the District Court concluded that the instant transaction did not result in the exchange of reasonable consideration based on the following assessments of the value of the assets and liabilities involved.[7]

*Assets transferred from BMC/Foundation to UPMC–Braddock:*

> $13,325,000 in land, land improvements, buildings, and equipment from BMC
> $10,374,732 in current/cash assets from BMC
> $ 3,000,000 obligation from the Foundation
>   Total: $26,699,732

*Liabilities assumed by UPMC–Braddock:*

> $12,910,190 assumption of BMC debts by UPMC–Braddock
>   Total: $12,910,190

The Administrator had little difficulty concluding that, given the difference between $26.7 million and $12.9 million, reasonable consideration was not exchanged. App.

---

**7.** Many of these values are based on a post-merger appraisal conducted to determine the assets' fair market value for purposes of allocating consideration and calculating BMC's purported loss. App. 247–572.

51. After detailing the above figures, the District Court concluded, with no additional discussion, that "[t]he Secretary's conclusion that the transaction was not a bona fide sale is supported by substantial evidence in the record, including [UPMC–Braddock's] appraisals." Dist. Ct. Op. 21.

It is clear, however, that the figure of $13,325,000 as the value of the land, land improvements, buildings, and equipment from BMC is not accurate, and that the correct figure is closer to $3 million[8] The mistake is explained in UPMC–Braddock's opening brief, and the Secretary concedes the point in her supplemental brief. Once this $10–million error is taken into account, the reasonable consideration question becomes much closer, with UPMC–Braddock receiving $16.4 million in assets while assuming $12.9 million in liabilities. Under this recalculation, the assets given are no longer double what was received, but exceeded what was received by only $3.5 million. We will accordingly vacate the District Court's order and remand for further consideration of the bona fide sale issue. We note that there are two additional issues which may make the consideration question even closer.

First, it is not obvious that the $3 million from the Foundation is, as the Administrator describes it, a $3 million dollar "cash asset." App. 52. UPMC–Braddock argues that this $3 million number is not cash or a cash asset, and is instead a Fund that the Foundation can distribute to UPMC–Braddock at the Foundation's discretion. The relevant Agreement between the Foundation and UPMCS states that during the term of the Fund (comprised of the $3 million), the Foundation "shall apply so much of the Fund as the Foundation shall, in its discretion, deem adequate and appropriate." App. 592. The issue, then, is whether this asset should be valued at $3 million, or something less. Neither the Administrator nor the District Court focused on this issue, no doubt because it was unnecessary to reach it due to the disparity in the consideration when the inaccurate tangible asset value was used. However, the District Court should focus on the question of the proper valuation of the Foundation's commitment for purposes of assessing reasonable · consideration on remand.

Second, the $10,374,732 million dollar "current/cash assets" figure included only $2,328,991 in actual cash. App. 243. The rest of that figure includes, among other things, $5,328,657 in accounts receivable, the details of which (such as aging and collectability) were not addressed, and a variety of other assets that may not be available for immediate use.[9] In *Einstein* we intimated that it may be appropriate to discount fair market value of assets "to adjust for the fact that they [are] limited-use." 566 F.3d at 379. This is an issue that the District Court should consider on remand. Resolution of these two issues could affect the apparent $3.5 million discrepancy that still exists, possibly making the reasonable consideration issue a very close call.

---

8. The only independent appraiser used by either side to assess the value of the BMC land and depreciable assets opined that "the fair market value, as of November 29, 1996, of the business enterprise of Braddock Medical Center entities is reasonably represented by the following amount: $3,000,000." App. 343.

9. The other figures that are included in the $10,374,732 figure, according to the Booth Pro–Rata Method of calculating fair market value, are:

| | |
|---|---|
| Inventory: | $ 390,945 |
| Prepaids: | $1,054,826 |
| Workers Compensation Fund: | $ 924,888 |
| Other Long Term Assets: | $ 200,000 |
| Board Designated Capital Assets: | $ 146,425 |

App. 243.

Given the significant difference between the correct value and the figure the Administrator and District Court used as the value of the land, land improvements, buildings, and equipment from BMC, we find that the conclusion that the transaction between BMC and UPMCS did not result in an exchange of reasonable consideration was not supported by substantial evidence. Accordingly, we will remand so that the District Court may consider the question of the reasonableness of the consideration in light of the correct figure and after taking into account these two issues.

b.

As noted above, the District Court did not reach the issue of whether the transaction between BMC and UPMCS was conducted at "arm's length," since the District Court decided that reasonable consideration was not exchanged and so there was no bona fide sale. Whether the agreement to merge and affiliate was arrived at through arm's length negotiations is a fact-intensive inquiry, and we will not attempt to resolve that question for the first time here.[10] On remand, the District Court

should consider whether the merger was negotiated at arm's length as part of determining whether the merger was a "bona fide sale," unless its decision regarding the question of the reasonableness of the consideration exchanged again renders this unnecessary.

B. Related Parties

■ The second prong of the test for allowance of a depreciation adjustment requires the merger to have been between "unrelated parties" (as defined by 42 C.F.R. § 413.17). *Einstein*, 566 F.3d 368, 376–78. The relevant regulation states that "[i]f the statutory merger is between two or more related corporations (as specified in § 413.17), no revaluation of assets is permitted for those assets acquired by the surviving corporation." 42 C.F.R. § 413.134($l$)(2). The referenced provision, § 413.17, defines "related to the provider" as follows:

> Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization fur-

---

10. While the Administrator found that "the transaction was not consummated through an arm's length transaction" App. 50, its discussion centered on the consideration question, rather than on the relationship between the parties pre-merger or on other details of the negotiations. The Administrator did note that BMC did not seek out an appraisal of its land and realty assets until after the merger and that "[t]he record does not show that receiving the best possible price for the facilities was a major factor in the negotiations." App. 52. These are factors that the District Court should consider, although they are not dispositive of the issue.

We note that some facts in the record suggest that the transaction was negotiated at arm's length. Thomas Boyle, an attorney who was involved as counsel for BMC in the negotiations leading up to the merger and its completion, attested to the efforts made by BMC to pursue transaction partners in the

years prior to the deal with UPMCS, which included the following:

> In 1992, BMC considered merger possibilities and submitted requests for proposals to seven local area hospitals or health systems, however, none expressed an interest in acquiring or affiliating with BMC.... Beginning in the Spring of 1996, BMC/Heritage again solicited merger partners in an attempt to survive in its market which was characterized by being an underprivileged, poor economic community by commencing discussions with both UPMCS and St. Francis Health System. St. Francis Health System, in September of 1996, withdrew its interest in any further discussions; however, discussions and negotiations continued with UPMCS.

App. 236–37.

As to the need for the parties to be "unrelated" in order for the transaction to be "arm's length," we conclude that this condition has been satisfied in section III.B.3 below.

nishing the services, facilities, or supplies.

42 C.F.R. § 413.17(b)(1). The Secretary urges an interpretation of these two provisions whereby the relationship of the parties must be assessed both *pre-* and *post-*merger. This interpretation would require us, in this case, to examine the association, affiliation, and control not only of BMC and UPMCS, but also the relationship of BMC and UPMC–Braddock. This interpretation is set out in the Secretary's PM. With respect to "Related Organizations" the PM specifies:

> In applying the related organizations principle at 42 C.F.R. 413.17, consideration must be given to whether the composition of the new board of directors, or other governing body or management team, includes significant representation from the previous board(s) or management team(s). If that is the case, no real change of control of the assets has occurred and no gain or loss may be recognized as a result of the transaction. The fact that the parties are unrelated before the transaction does not bar a related organizations finding as a result of the transaction. That is, it is appropriate to compare the governing board/management team composition before the transaction with the governing board/management team composition after the transaction, even though there was no contemporaneous coexistence of those boards/teams.

PM A–00–76 (App.207).

Although the related parties issue was briefed and presented, the District Court did not rule on it, finding it unnecessary to reach that issue given its ruling on the "bona fide sale" prong. However, both the PRRB and the Administrator had ruled on the related parties issue, with the PRRB concluding that the merger was not between related parties, and the Administrator reversing. A review of their respective positions provides a roadmap for our discussion.

### 1.

The PRRB considered the related parties question in depth. The Intermediary had argued that the merger was a related party transaction pursuant to § 413.17, because BMC has the power to significantly influence or direct the actions and policies of UPMC–Braddock. Relying on the PM, it urged that the fact that the parties were unrelated prior to the transaction is not controlling if there is the requisite association or control between the parties *post-*transaction. In particular, the Intermediary argued that the composition of UPMC–Braddock's governing post-merger board, which consisted of a total of 18 members—6 members from the pre-merger board of BMC and 12 members from UPMCS—was enough to establish that the merger was between related parties, because there was "continuity of control" between BMC and UPMC–Braddock.

On the other hand, UPMC–Braddock argued that pursuant to the language of §§ 413.134($l$) and 413.17, a statutory merger is "between" unrelated corporations if the parties are unrelated *prior* to the transaction, and that BMC and UPMCS were unrelated prior to the transaction.[11] They argued that an interpreta-

---

**11.** Section 413.134($l$)(2) provides, in pertinent part:

> Statutory merger between unrelated parties. If the statutory merger is between two or more corporations that are unrelated (as specified in § 413.17), the assets of the merged corporation(s) acquired by the surviving corporation may be revalued....

> Statutory merger between related parties. If the statutory merger is between two or more related corporations (as specified in § 413.17), no revaluation of assets is permitted for those assets acquired by the surviving corporation.

> 42 C.F.R. § 413.134($l$)(2).

tion that also considered the relationship *post*-merger would be contrary to the plain language of the regulations. Additionally, UPMC–Braddock argued that even if the Intermediary's interpretation governed, the fact that six board members from BMC are on the UPMC–Braddock board is not enough to establish the "control" necessary for a finding that BMC and UPMC–Braddock were related. UPMC–Braddock urged that to be related, one entity must "control" the other—in this case, BMC must "control" UPMC–Braddock—and that under 42 C.F.R. § 413.17(b), "[c]ontrol exists if an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution." It argued that no individual or corporation had such power over UPMC–Braddock, since BMC no longer existed.

The PRRB adopted the position advocated by UPMC–Braddock. It found the plain language of the statutory merger regulation dispositive, stating that the text of the relevant regulation is "unambiguous in its meaning that the related party concept will be applied to the entities that are merging as they existed *prior* to the transaction." App. 756 (emphasis in original). The PRRB categorically rejected the Secretary's position: "the plain language of the regulation bars the application of the related party principle to the merging parties' relationship to the surviving entity." App. 756. In coming to this conclusion, the PRRB reasoned that the "very nature of a statutory merger as a combination of entities would likely result in some overlap of membership on the board of directors of the merging corporation and the surviving entity, as well as a continuation of other operations and personnel of the merging organization. The fact that this occurs does not disqualify a statutory merger from revaluation and recognition of any gain or loss under 42 C.F.R. § 413.134(*l*)." App. 756–57.

## 2.

The Administrator reversed the PRRB's decision and denied UPMC–Braddock's claim for reimbursement. It did so in reliance on the interpretation of the "related party" regulations adopted by the Secretary in the PM, holding as follows:

> In applying the related party principles at 42 C.F.R. § 413.17 ... consideration must be given as to whether the composition of the new board of directors of the surviving corporation included significant representation by [BMC] ... its parent corporation Heritage Health Services; or its subsidiary Heritage Foundation, and in that way shows a continuity of control over the surviving entity UPMC–Braddock.

App. 48.

The Administrator also set a low bar for establishing "control," noting that "the term 'control' includes any kind of control, whether or not it is legally enforceable and however it is exercisable or exercised." App. 48–49. The Administrator concluded that BMC had "control" over UPMC–Braddock based primarily on three facts: (1) that the governing board of UPMC–Braddock would consist of 6 individuals (out of 18 total board members) who would be appointed by the Foundation (the Foundation and BMC were both subsidiaries of Heritage Health Systems); (2) that BMC's existing management and medical staff were retained to help manage UPMC–Braddock; and (3) that UPMC–Braddock continued "with the same mission as" BMC.

## 3.

■ A reviewing court must defer to the agency's interpretation "unless an alternative reading is compelled by the regu-

lation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (citation and internal quotation mark omitted). As noted above, the District Court did not reach the related parties issue. The question of whether the merger here was between related parties turns on whether we accept the Secretary's interpretation of the regulation—a pure question of law. If we do not accept the Secretary's interpretation, it is clear that the merger was not between related parties, since both parties agree that BMC and UPMCS were unrelated prior to the transaction on November 30, 1996. Given this, and given that there is no need to remand the issue of whether the transaction was a bona fide sale unless we find that the transaction was between unrelated parties, we will address this issue.

The sole issue before us is whether the *post*-merger relationship between BMC and UPMC–Braddock is relevant to the "related parties" inquiry. As our review of the agency's ruling above makes clear, the resolution of the issue will turn on our interpretation of the regulations referenced above, §§ 413.134(*l*) and 413.17, and our view as to whether the Secretary's interpretation of those regulations—as set out in the PM and the PRM—is contrary to their plain meaning.

As noted above, the relevant regulation states that "[i]f the statutory merger is between two or more corporations that are unrelated (as specified in § 413.17), the assets of the merged corporation(s) acquired by the surviving corporation may be revalued." 42 C.F.R. § 413.134(*l*)(2)(i). We conclude, as did the PRRB, that the only permissible reading of this regulation is that "between" means "pre-merger." Our conclusion is supported by a recent opinion from the Tenth Circuit Court of Appeals concluding that "the plain language of the regulations precludes the Secretary's interpretation." *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1272 (10th Cir.2007). It is worth quoting from the opinion at length:

> The plain language of this provision [413.134(*l*)(3)(ii)], as well as the plain language of § 413.134(*l*)(3)(i), indicates that the "related parties" inquiry of § 413.134(*l*)(3) focuses solely on whether the parties to the consolidation were related prior to the transaction—not on whether they were related to the newly created entity. Where the plain language of a regulation is clear, we cannot torture the language to reach the result the agency wishes. The agency, after all, could easily have drafted language to achieve the result which it now advocates but did not do so. If the Secretary wants to take a position that is inconsistent with existing regulations, then the Secretary must promulgate new regulations under the notice-and-comment provisions of the APA, 5 U.S.C. § 553. *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995).

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1273 (10th Cir.2007) (some citations and internal quotation marks omitted). No other Court of Appeals has discussed the Secretary's interpretation of these related party regulations.[12]

---

12. One district court has accepted the Secretary's interpretation, holding that "in a one-time transaction such as a non-profit-entity merger, related-party analysis under 42 C.F.R. §§ 413.134 and 413.17 must include not only a review of the relationship between the merging parties, but also a review of the relationships between the merging parties and the surviving entity." *Jeanes Hospital v. Leavitt*, 453 F.Supp.2d 888, 899 (E.D.Pa. 2006). We do not find the arguments for this conclusion persuasive.

The language of the regulation, as well as common sense, compels this reading of the regulation. The regulation states that "[i]f the statutory merger *is between* two or more corporations that *are* unrelated (as specified in Section 413.17), the assets of the merged corporation(s) acquired by the *surviving* corporation may be revalued." 42 C.F.R. § 413.134(*l*)(2)(i) (emphasis added). The language about relatedness only refers to the parties to the merger—the corporations that the merger "is between"—not to the corporation that *results from* the merger. This is highlighted by the fact that the regulation explicitly refers to a "surviving" corporation, indicating that the agency knew how to refer to the surviving, post-merger entity if it wanted to. If the drafters had wanted to require that the merging corporations and the surviving corporation be unrelated, they could have done so.

The tense employed in the provision that sets forth what "related" means, § 413.17, lends further support:

> Related to the provider means that the provider to a significant extent *is* associated or affiliated with or *has* control of or *is* controlled by the organization furnishing the services, facilities, or supplies.... Control exists if an individual or an organization *has* the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

42 C.F.R. § 413.17(b) (emphasis added). UPMC–Braddock persuasively urges that "the use of the words 'is' and 'has,' rather than the words 'will have,' is significant." Appellant's Br. at 42. They continue, "Clearly, the drafters intended "relatedness" to be determined at the time of the sale." *Id.* This argument is compelling. The use of the present tense shows that, by its plain language, the regulation requires 'relatedness' to be determined at the time of the transaction—not after the transaction has taken effect. Additionally, the pre-merger entity (such as BMC here) will typically cease to exist at the time the surviving corporation (such as UPMC–Braddock) becomes operational. This means that the language related to control—requiring that there are two concurrently existing entities one of which "is associated or affiliated with or has control of or is controlled by" the other—could never be satisfied under the Secretary's recommended interpretation.

A corporation formed as part of the merger is not a party to the merger; it is the surviving corporation. Here, UPMC–Braddock is the surviving corporation. For the related parties inquiry, the only question is whether BMC and UPMCS were unrelated prior to the merger. To conclude that the merger vehicle corporation, UPMC–Braddock, should be considered in determining whether the merger was "between" two unrelated corporations is contrary to the plain language of the regulation.

Furthermore, to require the post-merger entity to have no meaningful association with the pre-merger entities defies common sense, as the PRRB noted. In merger transactions, the resulting or surviving corporation will, as a practical matter, be controlled by one or both of the merging parties. It is hard to imagine a scenario where this would not be the case. Adherence to the Secretary's view would render the loss adjustment unavailable in most if not all merger situations, regulating it out of existence.

We conclude, in line with the Tenth Circuit Court of Appeals, that the Secretary's interpretation is indeed unreasonable and contrary to the plain language of §§ 413.134 and 413.17. Contrary to what the Secretary urges, the plain language of the regulations makes it clear that, for

the purposes of the related parties inquiry under §§ 413.134 and 413.17, the relevant question is whether the parties were related prior to the merger.[13] Applying the correct interpretation of the regulations to the facts before us, it is clear that the parties were not related. The Agreement to Merge and to Affiliate was between "Heritage Health System and its Subsidiaries Braddock Medical Center and Heritage Health Foundation" and the "University of Pittsburgh Medical Center System." App. 772. As part of the merger agreement, BMC was merged "into a to be-formed subsidiary of UPMCS to be named 'University of Pittsburgh Medical Center, Braddock.'" App. 774–75.

BMC and UPMCS agreed to a merger. The agreement was "between" them. It is uncontested that BMC and UPMCS were unrelated at the time of the merger agreement.[14] Accordingly, we find that the transaction was not a "related party" transaction under §§ 413.134 and 413.17.

4.

While we would normally remand to the agency for it to apply the correct law to the facts, *INS v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), we need not do so where, as is the case with respect to the related parties issue here, we conclude that the Secretary's interpretation is unreasonable, and there are no further facts to find—both sides concede that BMC and UPMCS were unrelated prior to the merger. *See, e.g., Fogg v. Ashcroft*, 254 F.3d 103, 111–12 (D.C.Cir. 2001) ("In the face of such legal error, we would normally remand to the court for remand to the agency, but we do not do so when, as here, remand would be futile. Only one conclusion would be supportable." (internal citations and alterations omitted)); *Ruiz–Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir.2007) (finding that remand for an agency decision may not be necessary where the record is complete and no further expertise is required).

Because the parties were not related, the only issue to be decided on remand is

---

**13.** We note, also, that even using the Secretary's interpretation, there was no evidence presented that the six former directors of BMC appointed to the UPMC–Braddock board in accord with the terms Agreement to Merge and Affiliate had "the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution" as required for a finding of relatedness. Additionally, at least one district court has found that merely having a minority of members of a board is not enough to establish "significant" control, even if it does establish "some level of control." *Jeanes Hospital*, 453 F.Supp.2d at 901–02.

**14.** Contrary to the position taken by our dissenting colleague, we believe there to be no question that BMC and UPMCS were unrelated prior to the merger. The Secretary's attorney, Joel McElvain, so stated without hesitation at oral argument: "They [BMC and UPMCS] were unrelated before [the merger]." Transcript of Oral Argument at 45. Additionally, despite addressing the related parties

issue for fourteen pages in her brief—and previously before the PRRB, the Administrator, and the District Court—the Secretary has not once suggested that BMC and UPMCS were in any way related, whether through association, affiliation, or control, prior to the merger. Surely, this argument would have been made by the Secretary to defeat the argument that the merger was not a "related party" transaction because the parties were unrelated before the merger. Even the Intermediary's Supplemental Position Paper noted that the parties had no relationship prior to the merger:

> The mechanics of the affiliation was for UPMCS to form a subsidiary, UPMC–Braddock and for BMC to merge into that new subsidiary. That end was accomplished in accordance with State law. When BMC and UPMCS were working towards the affiliation, there was no cross-ownership and control between and/or among any of the organizations involved.

App. 742.

whether the merger was a "bona fide sale," since both prongs must be satisfied in order for the merger to qualify for the depreciation adjustment.

## IV.

For the foregoing reasons, we will vacate the District Court's order granting summary judgment in favor of the Secretary, and remand to the District Court for it to remand the case to the Administrator for further proceedings consistent with this opinion.

GARTH, Circuit Judge, concurring and dissenting:

Are Braddock Medical Center ("BMC") and University of Pittsburgh Medical Center System ("UPMCS") "related"?

If so—they are not entitled to a depreciation adjustment.

If not—they are.[15]

## I.

Let me begin by reciting the sequence of findings by the administrative entities and the Magistrate Judge with respect to the "relatedness" issue.

1. The Intermediary[16] found that the parties *were related* (looking post-merger).

2. The PRRB[17] found that the parties *were not related* (looking pre-merger).

3. The Administrator[18] found that the parties *were related* (looking post-merger).

4. The Secretary (of the Department of Health and Human Services) found that the parties *were related* (adopting the Administrator's decision).

5. The Magistrate Judge did not reach, and therefore did not decide, the "relatedness" issue.

6. The majority members of the this panel, relying in part on the parties (BMC and UPMCS) themselves, have now held that the parties are not *related.* *See* Maj. Op. at 437 ("If we do not accept the Secretary's interpretation, it is clear that the merger was not between related parties, since both parties agree that BMC and UPMCS were unrelated prior to the transaction on November 30, 1996.").

Having in mind the language of the Regulation that defines "related to the provid-

15. 42 C.F.R. § 413.17 provides that no depreciation is allowed if the statutory merger is between two or more related corporations. The Regulation states, in pertinent part:

Related to the provider means that the provider to a significant extent is *associated* or *affiliated* with or has *control of* or is *controlled by* the organization furnishing the services, facilities, or supplies. [...] Control exists if an individual or an organization has the power, directly or indirectly, significantly to *influence* or *direct* the actions or policies or an organization or institution.

42 C.F.R. § 413.17(b)(1) & (3) (emphases added).

16. When providers of covered Medicare services submit claims for reimbursement, such claims are initially assessed by private contractors known as "fiscal intermediaries." *See* 42 U.S.C. § 1395h.

17. If a provider is not satisfied with the fiscal intermediary's reimbursement determination, it may file an administrative appeal with the Provider Reimbursement Review Board ("PRRB"), a five-person administrative body whose members are appointed by the Secretary of the Department of Health and Human Services. *See* 42 U.S.C. § 1395oo.

18. The Administrator of the Centers for Medicare and Medicaid Services ("Administrator"), may, at his or her discretion, review a decision of the PRRB. *See* 42 C.F.R. § 405.1875.

er," *see supra* n. 1, I submit that I cannot—at this point in time—possibly know whether BMC is indeed "related" to UPMCS or not, because neither the Magistrate Judge nor any of the Administrative adjudicators undertook the tasks of fact-finding and applying the facts found to the requirements of the Regulation. Thus, I cannot agree at this stage that the parties to the merger were not "related" as that term is defined in 42 C.F.R. § 413.17(b)(1) & (3).

## II.

I have no problem accepting the majority's view that we should confine our decision to pre-merger inquiries. *See Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1273 (10th Cir.2007). What concerns me, however, is that the various Administrative adjudicators below, when addressing the "relatedness" issue, focused almost entirely on the question of whether the "relatedness" inquiry looks only at the *pre-merger* circumstances, or whether it takes into account the *post-merger* relationship between the parties. Virtually no attention was paid to the substantive portion of the Regulation, i.e., whether BMC and UPMCS were "associated" or "affiliated" in any way, or had the ability, directly or indirectly, to "direct" or "influence" the actions and policies of the other.[19]

The Majority Opinion at 439 asserts that "[i]t is uncontested that BMC and UPMCS were unrelated at the time of the merger agreement," and in support cites to the Intermediary's Supplemental Position Paper, which states that "when BMC and UPMCS were working towards the affiliation, there was no cross-ownership and control between and/or among any of the organizations involved." App. 742. I note, however, that the Intermediary made no factual findings, while focusing on post-merger influences, and, perhaps most significantly, addressed only one of the three elements that comprise "relatedness" under § 413.17—namely, the element of "control."[20] Findings regarding the remaining elements—association, affiliation, direction, and influence—are conspicuously absent not only from the Intermediary's determination, but also from the record as a whole.

As examples: if indeed there was—or is—"lurking in the woods" a common stockholder of both BMC and UPMCS, such an individual might very well constitute a sufficiently tangible link between the two entities so as to render them "associated" or "affiliated"—and therefore "related"—pursuant to § 413.17. By the same token, if a BMC director is related, by blood or otherwise, to a UPMCS director, there might very well have been

---

**19.** Moreover, to the (limited) extent that the Administrative adjudicators below did undertake a substantive "relatedness" inquiry, three of the four—including the Administrator and the Secretary—were operating on the premise that the "relatedness" inquiry implicates *post*-merger relationships. As we hold today, *see* Maj. Op. at 438–39, only *pre*-merger circumstances are material for the "relatedness" inquiry. Given that we are holding that the law applied by three of the four Administrative adjudicators was incorrect, the obvious course is to remand to the Magistrate Judge to apply the essential facts (once found) to the correct law. *Cf. Hasan v. U.S. Dept. of Labor*, 545 F.3d 248, 251 (3d Cir.2008) ("If an

administrative agency makes an error of law, we must correct the error of law committed by that body, and after doing so, remand the case to the agency so as to afford it the opportunity of examining the evidence and finding the facts as required by law.") *(quoting ICC v. Clyde S.S. Co.,* 181 U.S. 29, 21 S.Ct. 512, 45 L.Ed. 729 (1901)) (alterations and quotation marks omitted).

**20.** In addition, the wholly conclusory nature of the Intermediary's finding on this issue— no factual basis whatsoever was provided— renders it an inappropriate foundation for a conclusion on the "related" issue.

influence or direction exerted by one over the other that would render BMC "to a significant extent . . . associated or affiliated with" UPMCS. 42 C.F.R. § 413.17(b)(1). However, I, for one, cannot ascertain the reality of these—or countless other hypothetical scenarios—from the record, because the issue of "relatedness" was never explored by the Magistrate Judge.

We can only assume that the Department of Health and Human Services used a plethora of terms—association, affiliation, control, direction, and influence—in defining relatedness "because it intended each term to have a particular nonsuperfluous meaning." *Bailey v. United States,* 516 U.S. 137, 146, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In other words, the inclusion of terms other than "control" must be read as an intention to extend the category of "relatedness" to scenarios where some connection or influence exists between the merging entities.

Accordingly, to answer the "related" inquiry, which the Regulation requires,[21] a factual inquiry must be undertaken that explores all of the indicia of "relatedness" listed in § 413.17. It has not been. In the absence of such an inquiry and concomitant fact-finding, I cannot conclude that the merging parties were either "related" or "unrelated." I suggest that neither can my colleagues in the majority.

I therefore would require that, on remand, (which in any event the majority is ordering to review the bona fide sale issue,) we also direct the Magistrate Judge to explore the pre-merger question of whether there was any affiliation, influence, direction, or association between BMC and UPMCS, leading to the ultimate conclusion of "related" or "unrelated." Only then can we exercise the review that appellate courts must employ. *Cf. Chalfant v. Wilmington Inst.,* 574 F.2d 739, 747 (3d Cir.1978) (Garth, J., dissenting) ("Embarking on its own fact finding excursion, the majority of this court has . . . acted not as a reviewing authority but rather as an initial fact finder [ . . . ][,] [thereby] transgress[ing] its fundamental function as an appellate court . . . ").

To that extent—and to that extent only—I respectfully dissent from the holding of the Majority Opinion.

---

21. 42 C.F.R. § 413.134(*l*)(2) states, in pertinent part:

> (i) Statutory merger between *unrelated* parties. If a statutory merger is between two or more corporations that are unrelated (as specified in § 413.17), the assets of the merged corporation(s) acquired by the surviving corporation may be revalued. . . .

> (ii) Statutory merger between *related* parties. If the statutory merger is between two or more related corporations (as specified in § 413.17), no revaluation of assets is permitted for those assets acquired by the surviving corporation.
> (emphases added).