NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4088
_____

JEANES HOSPITAL,

Appellant

v.

SECRETARY OF HEALTH AND HUMAN SERVICES
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-04-cv-00395)
District Judge:  Honorable Cynthia M. Rufe
_____

Argued September 21, 2011
Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: October 17, 2011)

Terry Coleman
Douglas Hallward-Driemeier (Argued)
Ropes & Gray
700 12th Street, N.W.
One Metro Center, Suite 900
Washington, DC  20005

Deborah K. Gardner
Jeffrey L. Heidt
Ropes & Gray
800 Boylston Street
Prudential Tower
Boston, MA  02199

Gregory L. Liacouras

Liacouras & Smith
1515 Market Street, Suite 808
Philadelphia, PA  19102
    *Counsel for Appellant*

Joel McElvain (Argued)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7130
Washington, DC  20530

Michael S. Raab
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W., Room 7237
Washington, DC  20530
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Jeanes Hospital ("Jeanes") appeals from the order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of appellee Kathleen Sebelius, Secretary of the United States Department of Health and Human Services ("Secretary").  The District Court affirmed the decision of the Administrator of the Centers for Medicare and Medicaid Services ("Administrator" or "CMS") denying Jeanes's claim for reimbursement based on depreciation losses realized as the result of a statutory merger.  For the reasons stated below, we will affirm.

I.

This action arises out of a Medicare regulatory scheme that reimburses participating providers for the "reasonable cost" of furnishing covered services to Medicare beneficiaries. 42 U.S.C. § 1395f(b)(1). "Reasonable cost" is defined as "the cost actually incurred, excluding . . . cost[s] found to be unnecessary in the efficient delivery of needed health services, and . . . determined in accordance with regulations" promulgated by the Secretary. 42 U.S.C. § 1395x(v)(1)(A). Regulations in effect during the merger provided for "[a]n appropriate allowance for depreciation on buildings and equipment" based on the allocation of an asset's historical cost across its useful life; following a deduction, the value of an asset would be adjusted downwards accordingly, yielding the asset's "net book value." 42 C.F.R. § 413.134(a)-(b). Providers could also claim depreciation reimbursements for a "loss" upon transfer of asset ownership, including statutory mergers, if the disparity between the sales price of an asset and its net book value indicated that prior deductions did not reflect the asset's actual decline in value. *See* 42 C.F.R. § 413.134(f)(2), (k)(2).[1] To qualify for reimbursement after a merger, the Secretary required the transaction to meet the definition of a "bona fide sale,"[2] 42 C.F.R. § 413.134(f)(2), (k)(2), which "in this context is a transaction that has

---

[1] At the time of the merger, this subsection was designated as (l)(2) instead of (k)(2); the redesignation in 2000 did not alter the subsection's content. *See Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 374 n.5 (3d Cir. 2009).

3

been (1) negotiated at arm's length and (2) results in an exchange of reasonable consideration." *UPMC-Braddock Hosp. v. Sebelius*, 592 F.3d 427, 432 (3d Cir. 2010).

II.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 1994, adverse economic conditions forced Jeanes Hospital, a non-profit Quaker institution, to explore partnership possibilities with several regional service providers to ensure its survival. In 1995, after evaluating its options, Jeanes entered into a memorandum of understanding with the University of Pennsylvania Health System ("Penn"). After three months of due diligence, however, Jeanes rejected the proposed merger with Penn, opting instead to pursue an affiliation with Temple University Health System, Inc. ("Temple"). Over the next several months, Jeanes and Temple conducted due diligence and negotiations that culminated in an Affiliation Agreement ("Agreement") providing for a statutory merger between the two entities, effective July 1, 1996.

Pursuant to the Agreement, Temple assumed all assets, obligations and liabilities of the old Jeanes Hospital ("Old Jeanes"), absorbed the old hospital into a new Temple

---

[2] The Secretary also required the merger to be between unrelated parties, an issue which was resolved in favor of Jeanes by a previous decision of the District Court, *Jeanes Hosp. v. Leavitt*, 453 F. Supp. 2d 888 (E.D. Pa. 2006), and therefore is not contested in the present appeal.

entity, and renamed it Jeanes Hospital ("New Jeanes"). The Agreement also provided for, *inter alia*, a $1 million payment to Jeanes System Management Company, which controlled Old Jeanes, to be renamed the Anna T. Jeanes Foundation ("Foundation") after the merger; empowered the Foundation to nominate members to the board of New Jeanes; promised Temple's adherence to Old Jeanes's mission for at least five years; and committed a $4 million dollar line of credit to New Jeanes and $7 million for the development of a primary care physician network.

At the time of the merger, Jeanes's financial statements reported total assets of approximately $113 million and liabilities of approximately $68 million. A post-merger appraisal requested by New Jeanes estimated the value of the old hospital's depreciable assets in three ways: under the reproduction-cost approach, assets were valued at $48.8 million; under the income approach, assets were valued at $30.1 million; and under the sales approach, assets were valued at around $30 million. Based on the disparity between the value of its depreciable assets as estimated under the income approach and their net book value, Jeanes recognized a "loss" from the merger and submitted a claim for depreciation reimbursement to Medicare's fiscal intermediary, Mutual of Omaha Insurance Company ("Intermediary"). The Intermediary denied the claim on the grounds that the merger was between related parties and failed to qualify as a bona fide sale.

Jeanes appealed to the Provider Reimbursement Review Board ("PRRB"), which reversed the Intermediary's decision and allowed the claim. The Intermediary solicited review by CMS, which denied the claim as between "related parties." Jeanes sought

review in the Eastern District of Pennsylvania, where the District Court overturned the Administrator, but remanded to determine whether a bona fide sale had occurred.

On remand, the PRRB upheld Jeanes's claim for reimbursement, finding that the merger qualified as a bona fide sale. The Administrator again reversed, concluding that the merger was not an arm's-length transaction and – based on the large disparity between the assets as valued under the cost approach ($103.4 million) and the sales price ($69 million) – did not involve an exchange for reasonable consideration, and therefore did not qualify as a bona fide sale.

Jeanes sought review in the Eastern District of Pennsylvania for a second time, where the District Court sustained the Administrator's finding that the merger did not constitute a bona fide sale. Although the District Court disagreed with the Administrator's determination that the sale was not conducted at arm's length, it nonetheless found that the exchange lacked reasonable consideration. Accordingly, the District Court denied Jeanes's motion for summary judgment. Jeanes timely appeals.

III.

The District Court had jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we apply the same standard of review as the District Court, our review is *de novo*. *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 373 (3d Cir. 2009).

Under the Administrative Procedure Act, we may set aside the Administrator's decision only upon a finding that it was "unsupported by substantial evidence" or

6

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); *UPMC-Braddock*, 592 F.3d at 430. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Einstein*, 566 F.3d at 372 (internal quotation omitted). The Administrator's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001).

We must defer to an agency's interpretation of its own regulations "unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson Univ. Hosp. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotation omitted). "This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." *Id.* (internal quotation omitted); *Einstein*, 566 F.3d at 373. Critically, we "do[] not have the 'task . . . to decide which among several competing interpretations best serves the regulatory purpose.'" *Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006) (quoting *Thomas Jefferson*, 512 U.S. at 512).

IV.

In order to "eliminate the potential for self-dealing and ensure that Medicare only reimburses providers for their actual costs," Medicare regulations permit loss payments for statutory mergers only when they occur between "unrelated parties" and qualify as a "bona fide sale." *Einstein*, 566 F.3d at 374-75. According to CMS guidance, a bona fide sale is "a transaction that has been (1) negotiated at arm's length and (2) results in exchange of reasonable consideration." *UPMC-Braddock*, 592 F.3d at 432; Program Memorandum A-00-76 (Oct. 19, 2000) ("PM"); Provider Reimbursement Manual, Ch. 1, § 104.24 (May 1, 2000) ("PRM"). The burden of proof for obtaining reimbursement rests on the provider. 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.24(a); *Mercy Home Health*, 436 F.3d at 380. Here, although the Administrator's determination that the Jeanes-Temple merger was not an arm's-length transaction is not supported by substantial evidence, we will defer to his conclusion that reasonable consideration was not exchanged and, therefore, that the merger was not a bona fide sale.

The CMS Program Memorandum states that an arm's-length transaction "is a transaction negotiated by unrelated parties, each acting in its own self-interest." PM A-00-76. A seller's pursuit of alternative transaction partners and selfish negotiations for financial concessions epitomize arm's length bargaining, *see UPMC-Braddock*, 592 F.3d at 434 n.10; PM A-00-76 (describing typical arm's-length transaction), but where a seller negotiates solely for the benefit of the surviving entity or in total disregard of the price, the transaction cannot be considered at arm's length. *See Einstein*, 566 F.3d at 378-80; *Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1276 (10th Cir. 2007).

8

Jeanes argues, and we agree, that the decision of the Administrator on this issue is unsupported by substantial evidence. While acknowledging that Old Jeanes "explored the market" for merger partners before settling on Temple, the Administrator found that the negotiations "did not involve seeking out the best purchase price for the [hospital's] assets" and centered on obtaining benefits that would inure only to New Jeanes. *Jeanes Hosp.*, Dec. No. 2009-D23, 18-23 (Ctrs. for Medicare & Medicaid Servs. July 24, 2009). In reaching this conclusion, the Administrator gave short shrift to evidence in the record which compels a finding that Jeanes negotiated rigorously, selfishly and with an adequate concern for price. Old Jeanes conducted lengthy due diligence with both Penn and Temple, extracted concessions from Temple for both itself and New Jeanes, and, after being rebuffed on its initial $5 million demand, obtained a $1 million commitment to the Foundation[3] over and above the statutory merger price (which, notably, was a benefit that the proposed Penn merger did not include). The merger bore the hallmark characteristics of arm's-length bargaining, and particularly in light of the adverse economic conditions facing Old Jeanes, this evidence compels a finding of an arm's-length transaction.[4]

---

[3] Although the Secretary contends that this benefitted the surviving entity, we agree with Jeanes that the record clearly shows that the Foundation remained independent of New Jeanes, even if its mission complemented that of the hospital.

[4] As Jeanes argues, "[t]he Secretary is not free to disregard this self-interested bargaining simply because she believes Jeanes should have obtained a better price." Reply Br. at 6. Rather, to the extent that the Administrator discounted this concession because of the amount, that concern properly belongs in the second prong of the bona fide sale test: whether reasonable consideration was exchanged.

9

Instead, the Administrator concluded that Old Jeanes's interest in non-price factors, such as continuation of the hospital's mission and commitments to benefit the surviving entity, precluded the finding of an arm's-length transaction. *Id.* However, the fiduciary duties of non-profit boards require precisely such behavior, *see*, *e.g.*, Nonprofit Corporation Law of 1988, 15 Pa. Cons. Stat. § 5547(a), so this rationale, seized upon by the Secretary on appeal, would effectively disqualify all non-profit providers from obtaining depreciation adjustments. As we said in *UPMC-Braddock*, the Secretary may not interpret her regulations in such a way as to categorically "render the loss adjustment unavailable in most if not all merger situations." 592 F.3d at 438. Therefore, the Administrator's focus on these factors was improper; the merger qualifies as an arm's-length transaction.

However, we will defer to CMS expertise in evaluating the reasonableness of consideration exchanged in the merger. "In assessing whether reasonable consideration was exchanged, a determination must be made as to whether the exchange of value for value was close enough to qualify as reasonable consideration." *UPMC-Braddock*, 592 F.3d at 432. A sale results in an exchange of reasonable consideration when the price reflects the fair market value of the assets conveyed, and a "large disparity" between the two "indicates the lack of a *bona fide* sale." PM A-00-76. The Program Memorandum further provides that, if an appraisal is used, "the cost approach is the most appropriate methodology to be used in establishing the fair market value of the assets." *Id.*

10

As evidence that reasonable consideration was exchanged, Jeanes offered a post-merger appraisal of the hospital's depreciable assets. However, because of the gross disparity between the assets as valued under the cost approach, $103.4 million, and the price paid by Temple, $69.2 million (approximately 66% of the value of the assets), the Administrator rejected Jeanes's claim. *Jeanes*, 2009-D23 at 26-27. Jeanes raises three principal arguments[5] against this estimate, essentially asking us to second guess the Administrator's established method of calculating fair market value. In light of the complex and technical nature of the Medicare regulations at issue, *see Thomas Jefferson*, 512 U.S. at 512, and because it is not our "task . . . to decide which among several competing interpretations best serves the regulatory purpose," *Mercy Home Health*, 436 F.3d at 377 (internal citation omitted), we decline to do so.

First, Jeanes contends that the Administrator arbitrarily ignored the regulatory definition of "fair market value" set forth in 42 C.F.R. § 413.134(b)(2): "the price that the asset would bring by bona fide bargaining between well-informed buyers and sellers at the date of acquisition." However, we have said that "[i]n assessing whether reasonable consideration was exchanged, a determination must be made as to whether the exchange of value for value was close enough to qualify as reasonable consideration." *UPMC-Braddock*, 592 F.3d at 432. In doing so, the Administrator relied on objective asset values reflected in the record, as counseled by CMS guidance. *Jeanes*, 2009-D23 at

---

[5] To the extent that Jeanes offers additional arguments, they derive from these three principal contentions.

26-27.  Since we have previously upheld the Secretary's regulations and guidance as reasonable, *Einstein*, 566 F.3d at 376-78, we owe the Administrator's decision the utmost deference, *Thomas Jefferson*, 512 U.S. at 512, and do not find it arbitrary.[6]

Second, Jeanes contends that the Administrator's estimate was unsupported by substantial evidence because he used the reproduction-cost approach in lieu of the income approach.  Jeanes argues that this is inconsistent with the regulations because the income approach reflects the "economic reality" of a transaction, while the cost approach only helps to allocate a lump sum price among discrete assets.  But, as the Administrator stated, the cost approach is preferred because price allocation among discrete assets is a "necessary" part of the process, and it is the most reliable method where, as here, there is a lack of market activity.  *Jeanes*, 2009-D23 at 24.  Conversely, the income approach is unreliable in the non-profit context.  *Id.* at 24-25.  Because the Administrator's interpretation is not plainly inconsistent with or contrary to the regulatory language, *Thomas Jefferson*, 512 U.S. at 512, and because we "do not have the task . . . to decide which among several competing interpretations best serves the regulatory purpose," *Mercy Home Health*, 436 F.3d at 377 (internal citation omitted), we will defer.  For

---

[6] Notably, the proposed definition would invert the regulatory scheme by using evidence of a bona fide sale to show reasonable consideration, which is precisely the opposite of the proper inquiry. Further, this approach would simply reiterate the arm's-length transaction requirement, making the two-prong test redundant, and would render the value for value comparison meaningless where, as here, non-monetary consideration (which by definition lacks objective value and is specifically excluded by the PM) plays a significant role in the exchange.  The Administrator was hardly arbitrary for rejecting such a definition.

substantially the same reasons, we reject Jeanes's third argument that even under the cost approach, the calculation of fair market value was erroneous because it did not account for economic or functional obsolescence. Medicare only allows reimbursement for "actual costs," 42 U.S.C. § 1395x(v)(1)(A), and the Administrator could reasonably exclude extreme market fluctuations from that calculus. *Jeanes*, 2009-D23 at 26 n.50.

V.

For the foregoing reasons, we will affirm the order of the District Court.