# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 3, 2015        Decided April 29, 2016

No. 15-5089

VIA CHRISTI HOSPITALS WICHITA, INC., AS SUCCESSOR TO ST.
FRANCIS REGIONAL MEDICAL CENTER,
APPELLANT

v.

SYLVIA MATHEWS BURWELL, AS SECRETARY OF HEALTH AND
HUMAN SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02060)

*Robert E. Mazer* argued the cause for appellant. With
him on the briefs was *James P. Holloway*.

*Debra Michelle Laboschin*, Attorney, U.S. Department of
Health & Human Services, argued the cause for appellee.
With her on the brief were *Benjamin C. Mizer*, Principal
Deputy Assistant Attorney General, *Vincent H. Cohen Jr.*,
Acting U.S. Attorney, *Joel McElvain*, Attorney, *William B.
Schultz*, General Counsel, U.S. Department and Health and
Human Services, *Janice L. Hoffman*, Associate General
Counsel, *Susan Maxson Lyons*, Deputy Associate General
Counsel for Litigation, and *David L. Hoskins*, Attorney. *R.*

2

*Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:  Via Christi Health Center seeks an upward adjustment of the capital-asset depreciation reimbursement paid to its predecessor hospitals under a since-curtailed Medicare regulation.  As a general matter, the Secretary of the Department of Health and Human Services reimburses Medicare providers for their reasonable costs actually incurred, including an appropriate share of depreciation on buildings or equipment used to supply Medicare services.  *See* 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A); 42 C.F.R. §§ 413.130, 413.134(a).  The depreciation allowance is ordinarily based on the Secretary's estimates of assets' useful life, *see* 42 C.F.R. § 413.134(a), but certain providers may claim a Medicare-reimbursable share of supplemental losses (or be liable for repayment of gains) incurred in qualifying pre-December 1997 transactions, *see id.* § 413.134(f), (l); *see generally St. Luke's Hosp. v. Sebelius*, 611 F.3d 900, 901-02 (D.C. Cir. 2010).[1]  Via Christi contends that the transaction that led to its formation—the 1995 consolidation of St. Francis and St. Joseph Hospitals—is a qualifying sale.  *See* 42 C.F.R. § 413.134(f)(2), (l)(3)(1).  Via Christi argues that it received St. Francis's and St. Joseph's assets at a lower value, i.e., more depreciated, than

---

[1] In 2000, 42 C.F.R. § 413.134(l) was designated, without substantive change, as subsection (k).  *See St. Luke's Hosp. v. Sebelius*, 611 F.3d 900, 901 n.2 (D.C. Cir. 2010) (citing 65 Fed. Reg. 8660, 8662 (Feb. 22, 2000)).  We refer to it as subsection (l) throughout this opinion.

was reflected in the Secretary's earlier depreciation reimbursements. As the hospitals' successor-in-interest, Via Christi thus seeks additional reimbursements to cover the proportional Medicare share of the depreciation.

Via Christi sought reimbursements relating to each of its predecessor hospitals, and the Secretary denied both claims on the ground that the 1995 consolidation was not a bona fide sale qualifying for adjusted depreciation under the regulations. The Secretary concluded that: (1) The parties neither engaged in arm's-length bargaining nor exchanged reasonable consideration, so the loss did not arise from a bona fide sale, *see id.* § 413.134(f); and (2) the transaction was between related parties, *see id.* § 413.134(l)(3)(i). The Tenth Circuit sustained the Secretary's denial of Via Christi's claim for $9.7 million relating to St. Joseph's assets. *See Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1261 (10th Cir. 2007). In this case, relating to St. Francis's assets, the district court sustained the Secretary's denial of Via Christi's claim for a $59 million depreciation adjustment.

We review *de novo* the district court's grant of summary judgment, "as though on direct appeal from the agency," *Catholic Healthcare W. v. Sebelius*, 748 F.3d 351, 353 (D.C. Cir. 2014), and we affirm. The Secretary reasonably interpreted the bona fide sale requirement as limited to arm's-length transactions between economically self-interested parties. The Secretary concluded that St. Francis's transfer of its assets to Via Christi was not an arm's-length transaction in which each party sought to maximize its economic benefit. Her determination was supported by substantial evidence, and was not arbitrary, capricious or otherwise unlawful. *See Forsyth Mem'l Hosp., Inc. v. Sebelius*, 639 F.3d 534, 537 (D.C. Cir. 2011). In the absence of a qualifying transaction,

Via Christi is not entitled to additional depreciation reimbursement.

## I.

## A.

As just noted, federal law requires the Secretary to compensate medical-care providers for the actual, reasonable costs of supplying Medicare services, *see* 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A), and reasonable costs include an appropriate allowance for depreciation, *see* 42 C.F.R. §§ 413.130, 413.134(a). The Secretary calculates depreciation by prorating the asset's purchase price over its anticipated useful life and reimburses a share of the depreciation to cover the use of assets in providing Medicare services. *Id*. § 413.134(a), (b)(1). At any given time, purchase price minus cumulative depreciation reflects the asset's "net book value." *Id.* § 413.134(b)(9). That value is only an estimate of the asset's fair market value. "[I]f an asset is sold for less than its net book value, the Secretary makes an additional payment to the provider, reflecting an understanding that the previous depreciation payments fell short of reflecting true cost." *Catholic Healthcare W*., 748 F.3d at 352-53.

The Secretary, consistent with the relevant Medicare regulations, makes that payment only when the loss results from a bona fide sale.[2] *See* Medicare Provider

---

[2] As noted above, the Secretary amended the relevant regulations after Congress eliminated the statutory basis for adjustments of reimbursements based on transactions occurring after December 1, 1997. *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4404, 111 Stat. 251, 400 (1997). Because St. Francis consolidated with St. Joseph to form Via Christi in 1995, the transaction remains subject to the regulation.

Reimbursement Manual § 104.24 (Manual or PRM) (May 2000), J.A. 1020; *see also Pinnacle Health Hosps. v. Sebelius*, 681 F.3d 424, 426 (D.C. Cir. 2012). The provider bears the burden of showing that a bona fide sale has occurred. *Forsyth*, 639 F.3d at 539.

Nonprofit entities are, by design, driven by purposes other than profit. The Secretary in 2000 issued Program Memorandum A-00-76 to guide application of section 413.134(f)(1) to mergers and consolidations of nonprofit Medicare providers, specifying that, "[a]s with transactions involving for-profit entities," nonprofits' transactions support depreciation reimbursement adjustments only if they are between unrelated parties and "involve one of the events described in 42 C.F.R. [§] 413.134(f) as triggering a gain or loss recognition by Medicare." *See* Clarification of the Application of the Regulations at 42 C.F.R. [§] 413.134(l) to Mergers and Consolidations Involving Non-profit Providers, Program Memorandum A-00-76 (Oct. 19, 2000), at 2, J.A. 1031. The type of qualifying event that Via Christi asserts occurred in this case is a consolidation, amounting to a type of "sale," which the Secretary treats as a qualifying event only if it is a "bona fide sale" between unrelated parties. *Id.* (emphasis omitted).

Any number of valid reasons may motivate a medical care provider to consolidate through a transaction that is not arm's length or economically self-interested, and a provider that does so receives reimbursement of capital costs as part of the reasonable costs of the services it provides. It is also, however, "perfectly reasonable" for the Secretary to decline to provide additional, adjusted compensation to non-profit providers that dispose of depreciable assets at a relative loss in a consolidation when that loss does not result from a bona fide sale. *Pinnacle*, 681 F.3d at 426. We thus reject Via

Christi's contention that St. Francis's sale of its assets did not need to be bona fide to trigger a loss adjustment.[3]

**B.**

We already have upheld part of the Secretary's definition of bona fide sale: "A bona fide sale requires the exchange of 'reasonable consideration' for the depreciable assets." *Pinnacle*, 681 F.3d at 427; *see St. Luke's*, 611 F.3d at 905-06. We now sustain the remaining elements of the definition: The Secretary reasonably concluded that a bona fide sale requires an arm's-length transaction between economically self-interested parties. The arms-length transaction prong of the rule requires that the seller aim to maximize return for the assets, while the reasonable consideration prong looks to whether the seller in fact received fair market value. The absence of either reasonable consideration or an arm's-length transaction dooms a claim for supplemental reimbursement.

In the Program Memorandum regarding nonprofit mergers and consolidations, the Secretary defined bona fide sale by incorporating the definition set forth in the Medicare Provider Reimbursement Manual. Program Memorandum A-00-76 at 3, J.A. 1032. The Manual defines a bona fide sale as "an arm's length transaction between a willing and well informed buyer and seller, neither being under coercion, for reasonable consideration." PRM § 104.24, J.A. 1020. According to the Manual, "[a]n arm's-length transaction is a transaction negotiated by unrelated parties, each acting in his own self interest." *Id*. The Secretary's Program Memorandum further explained that, in such a transaction,

---

[3] Accordingly, we need not address the Secretary's assertion that the Tenth Circuit's decision relating to St. Joseph collaterally estopped Via Christi from challenging the applicability of the bona fide sales rule to this transaction involving St. Francis.

"objective value is defined after selfish bargaining." Program Memorandum A-00-76 at 3, J.A. 1032.

In her decision in this case, the Secretary found that St. Francis did not negotiate at arm's length. When St. Francis and St. Joseph hospitals consolidated to form Via Christi Health Center, each hospital was a nonprofit corporation organized under Kansas law, and each had as a sponsor a religious order associated with the Catholic Church. When the hospitals consolidated, all their assets transferred to Via Christi, which, in exchange, assumed responsibility for all the hospitals' existing liabilities. St. Francis and St. Joseph ceased to exist, and the religious orders that had separately sponsored St. Francis and St. Joseph became the joint sponsors of Via Christi.

The Secretary found that St. Francis did not negotiate at arm's length because it "never pursued any efforts to maximize gains upon the consolidation or 'sale' of [its] assets." Ctr. for Medicare and Medicaid Servs., Decision of the Administrator (Sept. 1, 2009) at 27, J.A. 167. Instead of aiming to "maximize the proceeds received from selling its assets," the hospital sought to "advance [its] ministry." *Id.* at 27-28, J.A. 167-68. The transaction thus plainly served values important to the parties, but the Secretary determined that it was not the kind of self-interested market transaction that yields asset-valuation information warranting depreciation adjustment under the regulation.

Via Christi does not challenge the Secretary's conclusion that a bona fide sale requires arm's-length bargaining, but contends that transactions need not be motivated by financial gain maximization to qualify as arm's length under the regulation. The Secretary's contrary view, says Via Christi, is inconsistent with the definition of bona fide sale in Program

Memorandum A-00-76 and the Manual. Those materials speak of "self-interest," but do not specify the type of self-interest parties must pursue. St. Francis bargained at arm's length, Via Christi asserts, even though it did not seek the highest price for its assets.

We disagree. Because the bona fide sales rule "is a creature of the Secretary's own regulations, [her] interpretation of it is . . . controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted); s*ee St. Luke's*, 611 F.3d at 906. We owe "heightened deference to the Secretary's interpretation of a 'complex and highly technical regulatory program' such as Medicare." *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229 (D.C. Cir. 1994) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). Just as it is not plainly wrong or contrary to law for the Secretary to conclude that a bona fide sale requires reasonable consideration, *see Pinnacle*, 681 F.3d at 427, it is by the same token permissible for the Secretary to conclude that a bona fide sale requires arm's-length bargaining between economically self-interested parties, *see Via Christi*, 509 F.3d at 1275-76.

The Secretary's interpretation of the bona fide sales rule makes sense, and Via Christi cites no authority disallowing it. The point of the bona fide sales rule is that certain transactions involving providers' assets yield data that are more reliable indicators than the Secretary's depreciation estimates of the assets' actual market value, and hence of actual depreciation. For depreciation-adjustment purposes, the Secretary defines fair market value as "the price that the asset would bring by bona fide bargaining between well-informed buyers and sellers at the date of acquisition." 42 C.F.R. § 413.134(b)(2). The requirement that a Medicare

provider show an arm's-length transaction, as the Secretary understands it, works in tandem with the requirement of reasonable consideration to "ensure[] that any depreciation adjustment will represent economic reality, rather than mere 'paper losses.'" *Via Christi*, 509 F.3d at 1275. The arm's-length criterion helps to identify those transactions likely to lead to the seller's receipt of fair market value. The reasonable consideration inquiry asks whether the seller indeed received "the fair market value of the assets transferred." *St. Luke's*, 611 F.3d at 905.

The Secretary permissibly reads the regulation to provide that, where parties to a transaction were not acting at arm's length, motivated by gain maximization, they have not engaged in a bona fide sale. In such a case, it would not make sense for the Secretary to treat the price paid for the assets as accurately reflecting their market value. Consistent with our analysis, the Third Circuit in *Albert Einstein Medical Center v. Sebelius*, 566 F.3d 368, 378-79 (3d Cir. 2009), found a lack of arm's-length transacting where the record showed that the pre-merger provider was not seeking "to maximize the consideration paid" for its assets, but rather bargained for benefits that would "only inure" to the entity that resulted from the merger. Similarly, in *UPMC-Braddock Hospital v. Sebelius*, 592 F.3d 427, 434 n.10 (3d Cir. 2010), that court noted that the lack of record evidence that "receiving the best possible price for the facilities was a major factor in the negotiations" was an indication that the transaction was not arm's length. Without reliable criteria for identifying transactions that reflect fair market value, the Secretary could not gauge whether a provider had incurred a real loss warranting an augmented depreciation allowance.

Via Christi counters that it could not have maximized gain because it could not actually bargain. Kansas law, Via

Christi explains, required all of St. Francis's assets to transfer to Via Christi at the moment of consolidation. Via Christi has not, however, shown how the Kansas transfer-timing rule prevented St. Francis from negotiating a better price. State law does not appear to limit St. Francis's selling price to Via Christi's assumption of existing liabilities, *see* Kan. Stat. Ann. § 17-6709(a); St. Francis presumably could have bargained for additional cash or other consideration for its assets. Analogous to the nonprofit consolidation in this case, the statutory merger in *Forsyth* proceeded under a state law requiring the simultaneous dissolution of one provider and the post-merger entity's assumption of all the pre-merger entity's liabilities. 639 F.3d at 535. Here, as in *Forsyth*, the Secretary permissibly applied the bona fide sales rule to disallow an adjustment based on the exchange.

## C.

Via Christi further contends that, even accepting the Secretary's interpretation of arm's-length bargaining, the record does not contain substantial evidence that St. Francis sold its assets other than at arm's length. We disagree. The evidence in several respects confirms that St. Francis was not seeking to extract from the transaction the best, or even fair, value for its assets.

First, St. Francis did not attempt to discern the value of its assets before the sale. Via Christi sought an appraisal after the consolidation, and then only in order to calculate the amount of adjusted depreciation Via Christi, as successor, thought the government owed it. The record does not demonstrate that St. Francis sought in any other way to develop a sense of its assets' value before the transaction. If St. Francis did not even have an estimate of the value of its assets at the time of the sale, it could hardly have been well

positioned to bargain for the best deal. *See UPMC-Braddock*, 592 F.3d at 434 n.10 (lack of pre-transaction appraisal relevant to whether an arm's-length transaction occurred); *cf. Forsyth*, 639 F.3d at 535, 539 (lack of pre-transaction appraisal relevant to whether bona fide transaction occurred).

Second, St. Francis disavowed any interest in putting its assets up for sale on the open market. The objective of the hospitals' religious sponsors, who made the decision to consolidate, was that the hospitals consolidate with each other—and no one else—because they shared the same religiously oriented vision of care. Via Christi's chief financial officer, who previously had been St. Joseph's chief financial officer, agreed that, "[b]ecause of their religious affiliation," J.A. 291, the religious sponsors "would not have considered [a] public sale . . . in the marketplace," J.A. 298-99. That is not to say that St. Francis was generally uninterested in operating cost effectively or holding a strong market position. Indeed, those concerns apparently prompted St. Francis to consolidate with another hospital in the first place. But other, non-economic factors determined its choice of St. Joseph's as its consolidation partner and its decision to transfer all of its assets to Via Christi. *See Via Christi*, 509 F.3d at 1276 ("This was not an arm's length transaction. St. Joseph admitted that it was not attempting to get the full value for its assets, but rather its primary goal was to make a decision that would advance its ministry."); *cf. Forsyth*, 639 F.3d at 539 (sustaining determination of no bona fide sale where appellants "did not put [the hospital's] assets for sale on the open market"); *St. Luke's*, 611 F.3d at 904 (sustaining determination of no bona fide sale where "factors other than receiving the best price for its assets were motivations in the transaction"); *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557, 563 (9th Cir. 2008) (concluding that the provider did not attempt to obtain fair market value for its assets where

the provider "gave several reasons for seeking a merger, none of which involved the receipt of fair market value" and where "none of [the provider's] criteria for selecting a merger partner involved receiving a fair price for its assets"). Because assets' fair market value is what matters under the Secretary's depreciation reimbursement regulations, and because St. Francis did not seek through the consolidation to maximize its financial return on the sale, the Secretary fairly concluded that St. Francis had not engaged in arm's-length bargaining.

**D.**

The Secretary may condition depreciation adjustment on both the presence of an arm's-length transaction and the receipt of reasonable consideration for depreciable assets. Because St. Francis did not bargain at arm's length, we need not address Via Christi's challenge to the Secretary's determination that St. Francis also did not receive reasonable consideration. And because the lack of a bona fide sale justified the Secretary's refusal to revalue St. Francis's assets and issue a loss reimbursement, we also need not decide whether the Secretary was right that the sale was between related parties. *See Forsyth*, 639 F.3d at 539 (declining to address the Secretary's related-party determination for this same reason).

**II.**

In addition to challenging the substance of the Secretary's determination that St. Francis's asset sale was not bona fide, Via Christi contends that the Secretary committed several procedural errors. This court in other Medicare reimbursement cases has already rejected such claims of error. In *St. Luke's*, we sustained application of the Secretary's interpretation of its regulations, as set forth in

Program Memorandum A-00-76, to a transaction that occurred before the memorandum was issued. 611 F.3d at 907. We also rejected the argument that the bona fide sales rule is inconsistent with the agency's prior interpretations and adjudications. *See id*. at 906. Finally, in both *St. Luke's* and *Forsyth*, we summarily rejected challenges of the remaining types Via Christi raises, including that Program Memorandum A-00-76 was not timely published and that it required notice-and-comment rulemaking. *See id*. at 906 n.8 (endorsing the reasoning of the district court in *St. Luke's Hosp. v. Sebelius*, 662 F. Supp. 2d 99, 104-05 (D.D.C. 2009)); *Forsyth*, 639 F.3d at 537.

\* \* \*

The Secretary has reasonably required a bona fide sale to be an arm's-length transaction, and has fairly interpreted the arm's-length criterion to refer to gain-maximizing bargaining. Because substantial evidence supports the Secretary's conclusion that St. Francis did not engage in that kind of bargaining, and because the Secretary's decision is not arbitrary and capricious or otherwise unlawful, we affirm the district court's grant of summary judgment to the Secretary.

*So ordered.*